UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 0 6 2005
MAY 06 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03 CR 978 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| MOUSA MOHAMMED ABU MARZOOK, et al. | ) | |

## NOTICE OF FILING

TO:  Michael Edward Deutsch          Thomas Anthony Durkin
     People's Law Office             Durkin & Roberts
     1180 North Milwaukee Avenue     53 West Boulevard - Suite 615
     Chicago, Illinois 60622         Chicago, Illinois 60604

PLEASE TAKE NOTICE that on May 6, 2005, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANTS' INITIAL DISCOVERY MOTIONS**

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:  _____
     REID J. SCHAR
     Assistant United States Attorney
     219 South Dearborn Street - 5th Floor
     Chicago, Illinois 60604
     (312) 353-8897

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF COOK | ) |

JOANN S. DANCZAK being first duly sworn on oath deposes and says that she is employed in the Office of the United States Attorney for the Northern District of Illinois; that on the 6th day of May, 2005, she caused a copy of **GOVERNMENT'S RESPONSE TO DEFENDANTS' INITIAL DISCOVERY MOTIONS** to be mailed to the above-named individuals.

_____

SUBSCRIBED AND SWORN TO before me
this 6th day of _May_ , 2005

_____
NOTARY PUBLIC
My Commission Expires: _10-21-2006_

"OFFICIAL SEAL"
Peggy C. Leonard
Notary Public, State of Illinois
My Commission Exp. 10/21/2006

AE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# FILED

UNITED STATES OF AMERICA

MAY 06 2005  No. 03 CR 978
MAY 0 6 2005

v.

Judge Amy J. St. Eve

MOUSA MOHAMMED ABU MARZOOK

MICHAEL W. DOBBINS

## GOVERNMENT'S RESPONSE TO DEFENDANTS' INITIAL DISCOVERY MOTIONS

The United States of America, by its attorney, PATRICK J. FITZGERALD, United States

Attorney for the Northern District of Illinois, hereby responds to defendant Muhammad Salah's

Initial Motion for Discovery and defendant Abdelhaleem Ashqar's Motion to Adopt and For

Additional Discovery and states as follows:

## I. BACKGROUND

Since August 2004, the time of the return of the second superseding indictment in this case,

the government has been providing discovery materials to the defendants. In an attempt to expedite

the resolution of the case and permit the defendants fullest access to materials in the government's

possession, the government has been producing documents over and beyond its constitutionally

mandated discovery obligations. In fact, the government has repeatedly requested declassification

of materials for disclosure to the defendants although many such materials were not required to be

provided to the defendants. In addition, although the government has no power or authority to force

a foreign sovereign to declassify documents or even produce documents, the government has

requested that the State of Israel permit disclosure to the defendants of numerous classified materials

pertinent to the instant case. To date, Israel, despite its significant security concerns, particularly

regarding the identity and safety of its covert security agents, has made significant efforts to provide the requested materials.

All of the government's efforts have produced significant volumes of discovery for the defendants, including but not limited to: (a) audiotapes of interviews of defendant Salah; (b) certain statements of defendant Salah made to Israeli law enforcement; (c) documents from defendant Salah's Israeli court file; (d) transcripts from Salah's suppression hearing in Israel; (e) documents produced to the government from one of its retained experts; (f) statements made to the government by defendant Ashqar; (g) approximately 4,000 pages of documents pertinent to defendant Ashqar's INS proceedings; and (h) defendant Salah's United States consulate file. In addition, the government has produced hundreds of hours of audiotape and videotape derived from a variety of sources. The government will produce further tapes in the near future after they have been declassified. The government further has made available for inspection and copying thousands of pages of financial institution and phone company records relating to the defendants' conspiratorial ventures. The government is in the process of scanning those records into a computer so that they may be turned over to the defendants in a searchable electronic form. In many criminal cases, the defendants would be required to make arrangements to view and/or copy these records on their own. The government has also agreed to make available to the defendants certain draft translations of foreign language recordings and documents to facilitate the defendants' review of the discovery in this case.

Still, the government is not done. The government continues to review records from a variety of sources to determine whether there are discoverable materials that should be turned over to the defendants. Although the government believes the bulk of the materials presently discoverable in the instant case (as opposed to *Jencks* Act material discoverable at a later date) have been provided

to the defendants, the government continues to search for discoverable materials and will turn them over if located.

With this background regarding the government's efforts to meet its discovery obligations, the defendants have filed discovery motions that request materials even further beyond the government's required discovery obligations and, for many requests, not within in the government's power to produce. The government presumes that the vast majority of the defendant's discovery requests go well beyond what is required of the government during discovery precisely because the government has already provided the defendants the vast majority of the discovery to which they are entitlted. As set forth below, the defendants' discovery motions should be denied.

## II.  TANGIBLE OBJECTS

Defendants Salah and Ashqar request a host of materials under the claim that the materials sought are "tangible objects" and therefore discoverable under Fed. R. Crim. P. 16(a)(1)(E).[1] Under Rule 16(a)(1)(E), "tangible objects" are discoverable if in the "government's possession, custody, or control" and: (a) material to preparing the defense; (b) going to be used by the government in its case-in-chief at trial; or (c) obtained from or belonging to the defendant. The defendants claim the items they seek are both in the government's possession or control and material to their defense.

As will be demonstrated below, many of the items the defendants seek are not in the government's possession, custody, or control. To the extent any of the requested items are in the government's control, the defendants must first "make at least a *prima facie* showing that the requested items are material to [their] defense." *United States v. Thompson*, 944 F.2d 1331, 1341

---

[1]     Although Salah cites Fed. R. Crim. P. 16(a)(2)(C) for his "tangible objects" argument, this appears to be a typographical error.

(7th Cir. 1991) (citing *United States v. Maniktala*, 934 F.2d 25, 28 (2nd Cir. 1991)). "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Maniktala*, 934 F.2d at 28 (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)). A defendant cannot meet his *prima facie* burden with mere conclusory allegations regarding materiality. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991).

When reviewing the defendants' discovery requests, the court should also consider the "extensiveness" of the material the government has produced and the availability "of the disputed material from other sources." *Ross*, 511 F.2d at 763.

## A.   Documents Concerning GSS Interrogation Methods

The defendants request the government produce documents outlining specific interrogation methods of the Israel Security Service ("GSS" or "Shin Bet") as well as the names of all other "Palestinian detainees" who confessed to the GSS during an undefined period of time in which, according to the defendants, torture was the *"de facto"* method of interrogation. Salah Mem. at 5. The defendants' request is easily dismissed because the government is not in possession, custody, or control of the information the defendants seek. Rather, as the defendants appear to acknowledge in their filing, Israel is in possession of the information the defendants seek and the defendants wish to hold the government responsible for obtaining such information from a foreign sovereign because, the defendants allege, the information is needed for a "fair suppression hearing and relevant to the issues before the jury." Salah Mem. at 7.

4

The government does not control foreign sovereigns. Although the government has requested and received certain information from Israel to benefit the government's prosecution and to meet its discovery obligations,[2] the government is not required to seek information from Israel and, of course, even if the government were to request such information, Israel is under no obligation to provide the information to the government. *See United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997) (finding Rule 16 does not impose upon the government a duty to obtain documents controlled by non-governmental entities even if the government is aware such items exist). Although, as demonstrated below, the defendants' request should be denied outright, the defendants themselves may request from Israel the information they wish to obtain. The defendants may request that the Court issue a Letter Rogatory, that is, a formal request from the Court to the appropriate judicial authorities in Israel requesting testimony, documents, evidence, or service.[3]

Of course, beyond the fact the government is not in possession or control of the GSS directives and names the defendants seek, the requests are not material to a legal defense. In conclusory fashion, the defendants state the items are *Brady*, *Giglio*, fall under Rule 16, and are "essential" to a fair suppression hearing. Salah Memo. at 7. The defendants never state how these materials fall under any of these categories. *See Phillip*, 948 F.2d at 250 (finding a defendant cannot meet his *prima facie* burden of showing materiality with mere conclusory allegations regarding materiality).

---

[2]    The government has specifically requested that appropriate Israeli authorities search their files for materials that are discoverable under *Brady*, *Giglio*, and the *Jencks* Act.

[3]    Information on Letters Rogatory and Letter Requests to foreign sovereigns, including Israel, are set forth in a variety of publications that may be found on the website for the State Department's Bureau of Consular Affairs, www.travel.state.gov.

The government assumes the defendants intend to attempt to show that the Israelis used harsh interrogation tactics on a variety of prisoners and, therefore, must have used them on defendant Salah while he was in Israeli custody. Such an attempt would be a classic "propensity" argument specifically barred by Fed. R. Evid. 404(a), not relevant to the issue of defendant Salah's specific interrogation, and inadmissible for a number of reasons, including confusion and prejudice under Fed. R. Evid. 403. Thus, even if the government were in possession of the information sought, the defendants, to date, have offered no viable use for the information.

In addition, the defendants' request for the "identity, address and all written documentation" for all Palestinian detainees who confessed to the GSS is patently overbroad. It is the equivalent of a foreign sovereign asking the United States government to produce the name, address, and investigative files of every individual who provided a confession to the FBI over a several decade period of time. The request, on its face, is impossible to meet.

The defendants' request should be denied. In addition, to the extent the information the defendants seek exists in Israel, they have avenues available to attempt to obtain the information that they have yet to employ.[4]

### B. Information Regarding Israeli Law Enforcement in Contact with Defendant Salah

Defendant Salah requests the names, addresses, and reports of all "police, prison guards and

---

[4] It should be noted that to the extent the defense can demonstrate a viable legal defense that permits introduction of general GSS interrogation methods, the government has offered to attempt to work out a stipulation regarding accepted GSS interrogation methods during the specific period of Salah's interrogation so as to minimize the defendants' efforts in attempting to obtain the information from Israel. Moreover, to the extent such GSS methods may be classified, their admission or a stipulation regarding the methods may require implementation of the Classified Information Procedures Act, Section 4.

Palestinians (or others) collaborators" who participated in the interrogation of defendant Salah. To the extent the government has such information and it does not fall under *Jencks*, the information has been provided to the defendants, often in its original Hebrew form. The government is not in possession of any specific address, but, like other information that may be in Israel's possession, the defendants may seek such information through a Letter Rogatory.

The government is not representing to the Court or the defendants it has the names or reports of "all" Israeli law enforcement individuals who had contact with defendant Salah while defendant Salah was being interrogated. The government has requested such reports from Israel and has been provided with substantial documentation, the vast majority of which has been tendered to the defendants. This includes transcripts from Salah's Israeli suppression hearing, most of his medical records, reports of interview (which contain the official names of Israeli interviewers), and various GSS interrogation logs. The government has also been informed by Israel that it will not be provided with certain information (such as the names of Palestinian cooperators working with the GSS who were involved in the Salah case). The point is that to the extent the government is in possession of the information the defendants seek, such information has either been provided to the defendants or will be provided in *Jencks* discovery.

**C.    Documents Regarding Communications between the United States and Israel**

The defendants request (a) all communications between the United States and Israel regarding the arrest, search, and interrogation of defendant Salah, and, more broadly, (b) all documents created prior to 1994 which indicate a joint involvement between the United States and Israel in investigating "Hamas or other Palestinian resistance groups." Salah Mem. at 9. The government has already tendered defendant Salah's United States consulate file generated while

Salah was in custody. The consulate file details various contacts between the United States and Israel. To the extent that there are additional contacts between investigative agencies of the United States and Israel regarding Salah's arrest, search, and interrogation, the government will attempt to locate those contacts, determine whether they are discoverable, and, if so, provide them to the defendants.

The defendants' request for all contacts between the United States and Israel regarding Hamas or other Palestinian resistance groups is overbroad and will not produce relevant evidence. The defendants fail to offer any materiality argument for the information sought or how it would produce admissible evidence. Again, materiality "means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *Maniktala*, 934 F.2d at 28. Rather, the information sought must enable "the defendant significantly to alter the quantum of proof in his favor." *Id.* The government presumes the defendants wish to obtain the requested contact information between the United States and Israel to demonstrate that on a variety of occasions the United States and Israel were in contact regarding Palestinian terrorist organizations. To the extent such contacts exist, the defendants cannot offer them into evidence to prove the United States and Israel communicated during defendant Salah's Israeli confinement. Again, such an attempt would simply be irrelevant propensity evidence inadmissible under Rules 404(a) and 403.

The issue is whether and when the United States and Israel were in contact regarding defendant Salah. The government has already turned over discovery materials on this point and will attempt to locate other materials to the extent they exist. Beyond contact on the issue of defendant Salah, however, the defendants discovery request should be denied.

8

**D.** **Administrative Records Regarding the Designation of Hamas and defendant Salah**

The defendants request the "complete administrative record" that forms the basis of either the Department of the Treasury, Office of Foreign Asset Control's ("OFAC"), or the State Department's designation of Hamas as a foreign terrorist organization and/or defendant Salah as a specially designated terrorist. The defendants claim they need the designation records because they contain *Brady* material and to mount a due process challenge to the designation. Salah Mem. at 11-12.

As stated in open court, the government is aware of its *Brady* obligations. The defendants, however, cannot simply proffer *Brady* as a justification for a request and expect to receive everything they want. As the Seventh Circuit has noted, "a *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files." *United States v. Phillips*, 854 F.2d 273, 278 (7th Cir. 1988). Again, the defendants must make some showing that the *Brady* information they state exists is somehow material to their defense. *Id*. at 276-77. The defendants offer no explanation as to the materiality of the information sought other than stating it is "directly relevant to the criminal charges now pending" and "includes the government's prior version of the case against defendant Salah." Salah Mem. at 12. Conclusory allegations do not meet a defendant's need to prove materiality. In addition, to the extent the defendants claim the information is material because of internal government decision making, then the information sought is not "evidence" or a "tangible object" that is either *Brady* or discoverable under Rule 16. Indeed, it appears the defendants version of what they hope to find in the administrative records falls squarely under the Rule 16(a)(2)'s bar on disclosure of internal government reports and memoranda.

In addition, the defendants claim that they need the administrative records for a "due process" challenge is unavailing. As for defendant Salah's designation as a specially designated terrorist, such designation is not mentioned in the indictment and does not form the basis of any of the government's charges. Therefore, there is no due process challenge to make.[5]

The only charges that implicate Hamas' designation as a foreign terrorist organization are the substantive charge against defendant Salah under 18 U.S.C. § 2339B, and the RICO conspiracy charge that uses Section 2339B as a racketeering predicate. Under Section 2339B, a foreign terrorist organization is defined as an organization designated by the Secretary of State as a terrorist organization under Section 219 of the Immigration and Nationality Act. 18 U.S.C. § 2339B(g)(6).

As for Hamas' designation as a foreign terrorist organization, the defendants are barred by law from challenging the Secretary of State's designation. Title 8, United States Code, Section 1189 sets forth the procedures for the Secretary of State to designate a foreign terrorist organization, such as Hamas. Once a designation becomes effective, as has occurred with Hamas in the instant case, "a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing." 8 U.S.C. § 1189(a)(8). Courts that have addressed the issue have concluded that a criminal defendant may not challenge the Secretary of State's terrorist designation. *See United States v. Afshari*, 392 F.3d 1031, 1035-36 (9th Cir. 2004) ("Under § 2339B, if defendants provide material support for an organization that has been designated a terrorist organization under § 1189,

---

[5]     Defendant Salah's request for these materials appears more an attempt to use criminal discovery to obtain information that might aid a civilian administrative challenge to his designation. This is another instance in which there may exist avenues to obtain the desired information that the defendants have not pursued.

they commit the crime, and it does not matter whether the designation is correct or not."); *United States v. Hammoud*, 381 F.3d 316, 330-31 (4th Cir. 2004) (en banc).

Accordingly, the defendants do not have a legal basis to support their requests for the designation records and their request should be denied.

## E.  Documents Related to Defendant's Claim of Pre-Indictment Delay

In a series of exceedingly overbroad and unsupported requests, the defendants seek: (a) all written communications by any agent or agency of the government pertaining to the indictment of the defendants; (b) all written communications between a variety of Pro-Israeli groups and the Department of Justice ("DOJ") pressing for indictments of any fundraiser for a Palestinian resistance group or concerning information about charging any Palestinian; and (c) all press releases or press statements regarding the indictment or related investigations. The defendants sole argument for these requests is that they will yield information necessary for the defendant to file a pre-indictment delay motion alleging a Fifth Amendment violation. Salah Mem. at 12-13.

The defendants initial request, all internal governmental documents regarding the indictment, should be barred under Fed. R. Crim. P. 16(a)(2), which specifically exempts from discovery "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." In addition, other than throwing around conclusory allegations (*e.g.* the indictment was the product "improper political reasons, including pressure from the pro-Israel lobby," Salah Mem. at 13), the defendants offer no basis for the materiality of the evidence they seek or what specifically they hope to find in the information sought. Indeed, the requests are so absurdly overbroad and vague (*e.g. all*

11

written communications between *any* pro-Israel group and DOJ regarding charges against *any* Palestinian) that on their face they make clear the defendants are on a fishing expedition.

Further, the defendants proffered reason for needing the information, to support a motion alleging pre-indictment delay, is not valid. In the Seventh Circuit, "the statute of limitations for a particular crime generally serves as a safeguard for defendants against unreasonable prosecutorial delay. So long as the indictment is sought within the applicable time frame, and notwithstanding the possible loss of evidence or faded memories, the defendant will normally be able to defend himself adequately." *United States v. Henderson*, 337 F.3d 914, 919 (7th Cir. 2003) (citation omitted). Still, a "defendant may establish a due process violation if the prosecutorial delay caused actual and substantial prejudice to the defendant's right to a fair trial." *Id.* at 920. But, "[a] defendant must first show more than mere speculative harm but instead must establish prejudice with facts that are specific, concrete, and supported by evidence." *Id.* "If a defendant makes the proper showing, the burden shifts to the government to demonstrate that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason." *Id.* (quotation omitted).

Thus, as an initial matter, the defendants must demonstrate actual prejudice with facts that are specific, concrete, and supported by evidence. *Id.* None of the information sought by the defendants in their discovery requests goes to this issue. If, and only if the defendants show actual prejudice should the Court consider whether the government improperly delayed indictment for tactical advantage or another impermissible reason. *Id.* Even at this latter stage the burden would be on the government to demonstrate to the Court the reasons for the delay and, therefore, would not require disclosure to the defendants of the broad discovery they request.

12

The defendant's cite three cases in their brief, including two Supreme Court opinions, that all support the proposition that the defendants must demonstrate actual prejudice in their pre-indictment delay motion before the government's motives are questioned. Salah Mem. at 13. The defendants' citation of these cases for the proposition that they may prove unconstitutional pre-indictment delay through either demonstrating prejudice or improper government motive is misleading and inaccurate. The law is clear that proof of actual prejudice is a prerequisite to shifting the burden to the government to provide a permissible motive for delay.[6]

Accordingly, the defendant's discovery requests regarding pre-indictment delay materials should be denied.

### F.   Documents Related to Defendant's Selective Prosecution Claim

The defendants request all documents pertaining to "government knowledge" of illegal fundraising by violent pro-Israeli groups and any documents regarding internal government decisions regarding indictment of particular individuals involved in such fundraising. Salah Mem. at 14. The alleged basis for this request is to support a defense motion related to selective prosecution. As the defendants have failed to make the "required threshold showing – a credible showing of different treatment of similarly situated persons," *United States v. Armstrong*, 517 U.S. 456, 470 (1996), the defendants' discovery request should be denied.

The principles of law governing discovery demands in contemplation of launching a selective prosecution claim are well established.   The pertinent legal analysis commences with the fundamental principle that

---

[6]   Although the defendants have yet to proffer any proof of actual prejudice, the government is prepared to explain the timing of the indictment and easily rebut allegations of improper motivation for the alleged delay.

13

> The Attorney General and United States Attorneys retain 'broad discretion' to enforce the nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the laws be faithfully executed.' U.S. Const., Art., II, § 3 . . . . As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.

*Armstrong*, 517 U.S. 456, 464 (1996) (internal citations and quotations omitted). Nonetheless, "although prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws . . . is subject to constitutional constraints. In particular, the decision to prosecute cannot be based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 607-608 (1985). As a consequence, in order to establish a claim alleging impermissible selective prosecution, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608).

Because of the broad discretion afforded the Executive in determining whom to prosecute and what charges to bring, and to avoid subjecting prosecutors to the diversion of resources incidental to the assembly of documents necessary to support or refute a claim that such discretion was abused, "the showing necessary to obtain discovery [in support of a selective prosecution claim] should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 463-464; *see id.* at 468 ("The justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim"). As the Supreme Court further explained, "[t]he Courts of Appeals [therefore] require some

14

evidence tending to show existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *Armstrong*, 517 U.S. at 468 (quotation admitted).

In *Armstrong*, in support of their discovery request, the defendants, who were minorities, submitted several affidavits from various individuals claiming that there were an equal number of Caucasian drug dealers and minority drug dealers but that minority drug dealers were targeted for prosecution. *Id.* at 459-60. Accompanying one affidavit was a "study" listing 24 defendants, their race, whether they were prosecuted for specific crimes, and the status of each case. *Id.* at 459. The Court found the submissions in *Armstrong* insufficient to require the government to provide discovery. *Id.* at 470-71. In considering the "study," the Court noted "[t]he study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." *Id.* at 470; *see also United States v. Hayes*, 236 F.3d 891, 894-96 (7th Cir. 2001) (affirming denial of selective prosecution motion and denial of discovery because defendant had "failed to identify a single defendant of another race who met the guidelines [for prosecution of his crime] but was not federally prosecuted"); *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) (noting district court improperly granted defendant's selective prosecution discovery motion and noting "[b]efore a defendant can obtain discovery from the government on [the issue of selective prosecution], he or she must produce some evidence making a credible showing of both discriminatory effect and discriminatory intent") (quotations omitted).

In the instant case, the defendants have provided no evidence, let alone credible evidence, in support of their selective prosecution discovery request. Salah Mem. at 14-16. Rather, like most of the defendants' requests, they provided unsupported conclusory allegations in furtherance of their

15

demands. *See e.g.* Salah Mem. at 14 ("Despite [the government's] knowledge of the funding and support by individuals and organizations in the United Statets for violent Israeli 'settler' terrorist groups including 'Kach' and 'Kchane Chai,' who target and kill innocent Palestinian civilians, it is only those supporting the Palestinians who have been indicted."); Salah Mem. at 15 ("[T]he defendant claims that the government is prosecuting only Palestinians and refusing to prosecute the supporters and facilitators of Israeli acts of violence against Palestinians.").

In short, the defendants have not met their burden of producing credible evidence of selective prosecution sufficient to require discovery on the issue.[7]

### G. Other Documents Requested

In a final catch-all request, the defendants seek all contacts between any agency of the government or Israel and any person possibly affiliated with Hamas as well as documents indicating monetary support of Hamas. Salah Mem. at 16.

As noted above, the defendants may request the items they seek from Israel directly from Israel. To the extent any of the requested items are in the government's control, the defendants must first "make at least a *prima facie* showing that the requested items are material to [their] defense." *Thompson*, 944 F.2d at 1341. To meet this materiality requirement, the defendants must provide more than conclusory allegations and need to show the requested evidence would "significantly" alter the quantum of proof in their favor. *Maniktala*, 934 F.2d at 28.

---

[7]     In support of his claim that he need only meet a low burden to obtain discovery on issues of selective prosecution, defendant Salah cites and quotes from two cases, *United States v. Utecht*, 238 F.3d 882 (7th Cir. 2001) and *United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990), neither of which addressed selective prosecution claims and one of which pre-dates the Supreme Court's decision in *Armstrong*.

16

Here, the defendants offer no explanation as to why the requested documents are relevant other than to state that they impact the defendants' criminal intent. The government assumes that the defendants intend to suggest they did not act with the required criminal intent because they were aware that the government was actively supporting and meeting with Hamas and, therefore, did not think their actions in supporting Hamas were illegal. In short, to the extent certain of the crimes charged are intent crimes, the defendants are proposing a "good faith" defense in their dealings with Hamas.

If that is what the defendants intend, the only way the requested documents, if they even exist, are relevant, is to support the defendants knowledge of specific meetings between the government and Hamas or specific instances of monetary support provided to Hamas by the government. If, in fact, the defendants are aware of such meetings and support and relied on this information in committing their allegedly criminal acts, the information sought may be relevant (although not necessarily so). If, however, the defendants were not aware during the alleged period of criminal activity of any specific instances of meeting or support, evidence of such meetings or support is irrelevant to the defendants' state of mind and inadmissible for a variety of reasons.

The defendants, however, have failed to cite a single instance in which they claim to be aware of a specific meeting between the government and Hamas or the provision of support, in any form, by the government for Hamas. If the defendants can point to specific instances of conduct that they were aware of during the alleged criminal activity in which the government supported Hamas, the government will attempt to locate reports to determine whether the specific instances of alleged support occurred. Absent the defendants providing specific instances of conduct they were aware of, however, the defendants are again on a fishing expedition and cannot demonstrate the materiality

17

of the information sought.

Accordingly, without requests from the defendants related to specific instances of support or meetings, the defendant's catch-all discovery request should be denied.

## H.     Defendant Ashqar's Tangible Objects Requests

In addition to joining defendant Salah in requesting the items discussed above, defendant Ashqar has filed separate requests for: (1) communications from Israel to the United States regarding Ashqar and a variety of organizations; (2) all communications received by DOJ from certain individuals working on a civil case; and (3) all interviews conducted by any government agency with any Islamic fund-raising organization. Ashqar Mot. at 2. The defendant fails to offer a single reason why any of the requested items are material and, in fact, does not even provide a conclusory allegation as to their relevance or importance to the instant case.

Although the government is not in a position to know, it is possible the defendant requests these items to support either a pre-indictment delay motion or selective prosecution argument. The law in this area is set forth above and the defendant has not met the standards necessary to require the government to provide discovery on these topics. In addition, the government notes that certain of the information requested is in the hands of the Israelis as well as the individuals working on a civil case. The defendant has avenues other than forcing the government to review every agency's files to obtain the information requested (*e.g.* request to the Israelis, subpoenas, etc.).

Finally, the government again pauses to note the breadth of the defendant's request. The defendant seeks all interviews conducted by any "government agency" with "any or all Islamic fund-raising organizations." Ashqar Mot. at 2. The obviousness of the defendant's fishing expedition is clear from such requests. The defendant should not be permitted to rummage (or make the

18

government rummage) through all of the government's investigative files to attempt to locate what are likely tens of thousands of reports which can have no possible relevance to the charges in the instant case and are not properly discoverable.

Accordingly, defendant Ashqar's Rule 16(a)(1)(E) discovery requests should be denied.

## III.   *BRADY* MOTIONS

As stated in open court, the government is aware of its *Brady* obligations. Defendant Salah's *Brady* request, however, goes well beyond the requirements of *Brady* and its progeny. Salah Mem. at 17. For instance, one of defendant Salah's *Brady* requests demands the statements of any witness interviewed who failed to provide inculpatory evidence against defendant Salah. *Id.*

Defendant Salah's request for all interviews that failed to mention him is unsupported by case law and beyond the scope of *Brady*. In *United States v. Sims*, 808 F. Supp 607 (N.D. Ill. 1992), the court considered a similarly general request for witness statements and noted, given a general *Brady* request, evidence must only be disclosed if "obviously exculpatory" or if "the omitted evidence would create a reasonable doubt" as to the defendant's guilt. *Id.* at 615 (quoting *United States v. Agurs*, 427 U.S. 97, 107-113 (1976)); *see also United States v. Scarpa*, 913 F.2d 993, 1011 (2nd Cir. 1993) (surveillance tapes that revealed an absence of discussion of narcotics crimes did not have to be disclosed under *Brady* or Rule 16); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D. N.Y. 1993) (the fact that witness did not have drug-related conversations with defendant was not exculpatory).

The government again notes it is aware of its *Brady* obligations and will abide by them. The defendant's general and overbroad *Brady* requests, however, should be denied.

## IV.  ELECTRONIC AND OTHER SURVEILLANCE

### A.  Electronic Surveillance

The defendants seek disclosure of all applications, orders, and other documents related to electronic surveillance.  As noted in the background section of this filing, the government has disclosed significant quantities of electronic surveillance recordings to the defendants.  Additional recordings are currently being declassified so that they may be provided to the defendants.  Like the document review in the instant case, the electronic surveillance review is an ongoing process with additional discovery possible.

The defendants' request for documents supporting the electronic surveillance should be denied.  The government has informed the defendants they were the subject of electronic surveillance authorized under the Foreign Intelligence Service Act ("FISA"), Title 50, United States Code, Sections 1801-1811.  The FISA applications, affidavits, and orders related to the electronic surveillance are all classified "Secret."  As the FISA statute makes clear, 50 U.S.C. § 1806(f), when a Declaration and Claim of Privilege is filed by the Attorney General stating that disclosure or an adversary hearing would harm the national security of the United States, review of the FISA materials, to the extent a review is needed, must be *in camera* and *ex parte*.  Then Attorney General John Ashcroft filed such a declaration when this case was in the grand jury stage in relation to FISA intercepts of defendant Ashqar.  Further reasons for the need to keep these materials secret was set forth in the *ex parte*, classified affidavit of John S. Pistole, then-Acting Assistant Director, FBI Counterterrorism Division.  The government expects that should the defendants challenge the legality of FISA intercepts in the instant case, such affidavits will be forthcoming.

In addition, according to Section 1806(f), defendants *may* only obtain access to FISA materials where such disclosure is necessary to make an "accurate determination of the legality of the surveillance." Importantly, the FISA materials requested are classified. Neither defendant has provided any compelling reason as to why they need to review the materials in order for this Court to determine the legality of the surveillance. In fact, during the grand jury stage of this matter, challenge to the Ashqar FISA electronic surveillance was lodged and the same discovery requested. *In re Grand Jury Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197 (7th Cir. 2003). The Seventh Circuit noted at that time that the contemnor "was unable to cite any case in which classified or otherwise sealed FISA applications or orders were released to the subject of the investigation for review, even after indictment" and that the court itself found no cases where a FISA review was done in a fashion other than *ex parte* and *in camera*. *Id.* at 203. Thereafter, the Seventh Circuit "conducted a careful *in camera* and *ex parte* review of the entire record in this matter, and [concluded] that the FISA court properly granted the applications." *Id.* at 205.

The Seventh Circuit's resolution of the Ashqar FISA discovery request is consistent with other courts that have considered the issue. *See United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000)(affirming denial of disclosure of FISA materials); *United States v. Badia*, 827 F.2d 1458, 1464 (11th Cir. 1987)(finding no reason to disturb lower court's determination that FISA application and other information need not be disclosed in order to assess legality); *United States v. Nicholson*, 955 F. Supp. 588, 592 (E.D. Va. 1997)(stating "this Court knows of no instance in which a court has required an adversary hearing or disclosure in determining the legality of a FISA surveillance" and noting every court examining FISA evidence has conducted an *in camera, ex parte* review); *United States v. Rahman*, 861 F. Supp 247, 250 (S.D.N.Y. 1994)(finding no disclosure to any of the

21

defendants was necessary); *United States* v. *Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa. 1989) ("In enacting FISA, Congress intended to restrict, as much as constitutionally possible, discovery of FISA materials").

Accordingly, the defendants should not be permitted access to the still classified FISA information that they seek. To the extent the defendants wish to challenge the legality of the FISA electronic surveillance in the instant case, a challenge already unsuccessfully litigated to the Seventh Circuit, they may file motions to this end, the government can respond with the appropriate affidavits, and the court can consider the information *ex parte* and *in camera*. To date, the defendants have offered no reason to utilize a different method or a valid reason for the FISA discovery they request.

### B.    Physical Surveillance

Defendant Salah also demands all logs or notes of non-electronic surveillance conducted on him and his family from 1993 to the present. The defendant offers no case law to support such a broad request and the government is not aware of any. The only proffered explanation for the relevance of defendant Salah's request is that the surveillance will prove the defendant is not involved in illegal activities and is therefore *Brady*. The defendant's request is not supported by *Brady* or its progeny. Indeed, such logs would only be *Brady* if the evidence were "obviously exculpatory" or if "the omitted evidence would create a reasonable doubt" as to the defendant's guilt. *Siims*, 808 F. Supp. at 615.

The fact a defendant may have been seen on a particular day not committing a crime, whatever that standard may be in the context of a RICO conspiracy based on, among other predicates, money laundering and conspiracy to commit murder, is not exculpatory and not even

admissible. In fact, although the government has not yet done so, it will ultimately file a motion in limine to bar evidence of the defendants' lawfulness and/or non-corrupt conduct, except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Fed. R. Evid. 405(a).[8] Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.

In an effort to distract the jury from the crimes with which the defendants have been charged, defendants may seek to offer witnesses to testify that on prior occasions the defendants appeared to be acting lawfully. Any evidence or argument of this sort is inadmissible, and the Court should exclude it. The law is clear: "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa,* 897 F.2d 63, 70 (2nd Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *See, e.g., United States v. Scaroa,* 897 F.2d 63, 70 (2nd Cir. 1990); *United States v. Winograd,* 656 F.2d 279, 284 (7th Cir. 1981) (finding the district court correctly refused to admit certain evidence of legal conduct by the defendant because evidence that the defendant engaged in certain legal conduct is generally irrelevant to the issue of whether he knew of other illegal conduct); *United States v. Beno,* 324 F.2d 582, 589 (2nd Cir. 1963) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *Herzog v. United*

---

[8]     Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given *i.e.* be confined to the nature and extent of observation and acquaintance upon which the opinion is based").

23

*States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."); *United States v. Palumbo Brothers, Inc.*, 1998 WL 67623, at *3 (N.D. Ill. 1998) ("Evidence that the defendants acted lawfully on other occasions is inadmissible to prove that they acted lawfully on the occasions alleged in the indictment"), *rev'd on other grounds*, 154 F.3d 850 (7th Cir. 1998); *accord United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them).

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See Beno*, 324 F.2d at 584 and 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if the defendant were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."

To the extent any defendant intends to offer evidence regarding his character, he should be permitted to do so only in accordance with the limitations of Rule 405(a). Defendants should not be allowed to introduce evidence that they engaged in lawful activity on other occasions--under settled law this is not evidence that the defendants acted lawfully in the charged incidents.

Accordingly, since the discovery the defendants seek is not exculpatory and not even admissible, the discovery request should be denied.

24

### C. Ashqar's Rule 12 Requests

Under the auspices of Fed. R. Crim. P. 12, defendant Ashqar requests: (a) notice of whether a mail cover was used in the investigation of defendant Ashqar and a description of the evidence obtained through a mail cover; and (b) whether informants or undercover agents were used during the government's investigation. Like all of defendant Ashqar's discovery requests, he provides no case law in support of his demand.

The government has reviewed Rule 12 and finds no support for the defendant's requests within the rule. At most, Rule 12 notes that the defendant has a right to discovery under Rule 16. *See* Fed. R. Crim. P. 12(b)(4)(B). There is no basis in Rule 16 to require the government to disclose its investigative methods, including the use of mail covers or informants. Rather, under Rule 16, the defendant has a right to his statements, his criminal records, reports of expert witnesses, and documents and objects. Obviously, if informants were used, information they provided might be impeachment material discoverable at the appropriate juncture. But, the defendants have no right to simply be informed of the government's investigative techniques.

The government again represents to the court it continues to meet its Rule 16 obligations. Rule 16, however, does not require disclosure of the investigative methods and techniques employed in the instant case. Accordingly, defendant Ashqar's Rule 12 motions should be denied.

25

## V. CONCLUSION

The government has met the vast majority of its discovery obligations. As such, the defendants seek to go well beyond the scope of permissible discovery and attempt to obtain numerous documents and other forms of evidence not discoverable under either Rule 16 or the Constitution. Accordingly, as set forth above, the defendants' discovery motions should be denied.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:

JOSEPH FERGUSON
REID SCHAR
JULIET SORENSEN
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

26